IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| KYLE DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:24-cv-2370 (RDA/WBP) |
| | ) | |
| WASHINGTON GAS LIGHT CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant Washington Gas Light Company's Partial Motion to Dismiss (Dkt. 24). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motion together with the Second Amended Complaint (Dkt. 21), the Memorandum in Support (Dkt. 25), Plaintiff's Opposition (Dkt. 27), and Defendants' Reply (Dkt. 28), this Court GRANTS the Motion for the reasons that follow.

## I. BACKGROUND
### A. Factual Background[1]

Plaintiff brings a six-count Second Amended Complaint against his employer Defendant Washington Gas Light Company ("WGL") and Defendant Jennifer Mizelle Norris, who is WGL's Lead Labor Relations Business Partner. Dkt. 21. Those counts are asserted under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Americans

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Second Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

with Disabilities Act of 1990 (the "ADA").[2]

Plaintiff is biracial – his mother is Caucasian and his father is African American. *Id.* ¶ 5. WGL is a Virginia energy company. *Id.* ¶ 8. Plaintiff began working for WGL in January 2007 as a Meter Reader. *Id.* ¶ 12. At the same time, he joined the affiliated Teamsters Local 96. *Id.* ¶ 13. Over the years, Plaintiff held many positions, including Crew Assistant, Crew Mechanic, Crew Leader in Training, and Crew Leader, his current position. *Id.* ¶ 14. Plaintiff started the Crew Leader Development Program ("CLDP") in March 2013, and completed the program in 2017, after re-applying in 2015. *Id.* ¶ 15. Plaintiff was, and currently is, the only biracial Crew Leader. *Id.* ¶ 16.

In March 2014, Plaintiff filed his first Charge with the Equal Employment Opportunity Commission (the "EEOC") for race and color discrimination and for retaliation. *Id.* ¶ 17. He alleged that he was subjected to racially offensive communications from his supervisor, unfair discipline, and an unfair performance review. *Id.* ¶ 18. Plaintiff received a probable cause determination from the EEOC in April 2018. *Id.* ¶ 19. After conciliation failed, he received his Notice of Right to Sue in May 2018, and, in August 2018, he filed a federal Complaint against WGL in this District. *Id.*; *see also Dawson v. Washington Gas Light Co., et al.*, No. 1:18-cv-00971-CMH-JFA (E.D. Va.) ("*Dawson I*").

On June 7, 2018, Plaintiff filed a second Charge with the EEOC based on race and color discrimination and retaliation. *Id.* ¶ 20.

---

[2] Although Plaintiff makes references to asserting claims under the Virginia Human Rights Act (the "VHRA"), no count of the Second Amended Complaint is asserted under the VHRA. Accordingly, the Court does not construe the Second Amended Complaint as attempting to assert a VHRA violation.

In July 2018, Plaintiff was terminated from his Springfield Crew Leader position after receiving three separate notices of disciplinary actions, which he challenged. *Id.* ¶ 21. In 2018, the Teamsters filed grievances on Plaintiff's behalf and unanimously voted to take his case to arbitration to reinstate his position. *Id.* ¶ 22.

On September 9, 2019, former U.S. District Judge Claude M. Hilton granted summary judgment in favor of the defendants in the *Dawson I* case. *Id.* ¶ 23. Plaintiff appealed his case to the Fourth Circuit on October 8, 2019. *Id.* ¶ 24.

On December 10, 2019, the arbitrator assigned to Plaintiff's grievance ruled that the Defendant did not have "Just Cause" to terminate Plaintiff's employment and instructed Defendant to reinstate Plaintiff to the same grade and pay that he would have otherwise received. *Id.* ¶ 25. He was reinstated as Crew Leader on January 2, 2020, after being out of work for 18 months. *Id.* ¶¶ 26-27.

On January 3, 2020, Plaintiff was "involuntarily" sent to Rockville, Maryland, as a Crew Leader in Training. *Id.* ¶ 28. This work location was approximately twice as far from Plaintiff's residence than the Springfield, Virginia location. *Id.* ¶ 29.

Between October 26, 2020, and February 2022, WGL held a CLDP to promote employees to Crew Leader Positions. *Id.* ¶ 30. The program was a clear indication that WGL needed more Crew Leaders. *Id.* ¶ 31.

In December 2020, Plaintiff received an excellent performance appraisal from his supervisor, David Morgan. *Id.* ¶ 32.

On January 3, 2021, Plaintiff was rushed to the hospital and diagnosed with viral encephalitis, a brain infection. *Id.* ¶ 33. As a result of this infection, Plaintiff encountered

3

significant difficulty walking and talking. *Id.* ¶ 34. Plaintiff was placed on intermittent medical leave from January 4, 2021, until December 20, 2021. *Id.* ¶ 35.

On February 9, 2021, Plaintiff provided a letter from his neurologist to support his reasonable accommodation request for his assistant to drive for him. *Id.* ¶ 36. Cindy Abel, WGL's then Health and Medical Manager, denied his request. *Id.* ¶ 37.

On July 29, 2021, Plaintiff called Omoladun Schultz, WGL's new Health and Medical Manager, to inform her that his neurologist wanted to run additional tests (an EEG and/or MRI) before allowing him to return to work without any restrictions. *Id.* ¶ 38. On the same day, Mr. Dawson made a second request for his assistant to drive for him. *Id.* ¶ 39. Schultz called Plaintiff and denied his request. *Id.* ¶ 40. Schults later told Plaintiff that Abel and Defendant Jennifer Mizelle Norris of Labor Relations instructed her to do so. *Id.* ¶ 41. Plaintiff alleges that WGL failed to engage in the interactive process to determine how it may accommodate Plaintiff. *Id.* ¶ 42. Without this accommodation, Plaintiff's hourly wages were reduced. *Id.* ¶ 43. Without the accommodation Plaintiff could not make overtime pay. *Id.* Plaintiff received no pay between August and December 2021. *Id.*

On July 13, 2021, the Fourth Circuit affirmed Judge Hilton's decision in *Dawson I*. *Id.* ¶ 44.

In November 2021, Plaintiff was informed that his Crew Leader position was no longer available and that he had 30 days to look for another position. *Id.* ¶ 45.

On December 13, 2021, Plaintiff was medically cleared to return to work in Springfield, Virginia, as a Crew Leader without any restrictions. *Id.* ¶ 48.

On December 21, 2021, and February 16, 2022, Plaintiff emailed his Director, Mike Morgan, who is Caucasian, requesting that he be returned to his Crew Leader position, with his formerly assigned truck, and to remain at the Springfield, Virginia location. *Id.* ¶ 49.

On May 9, 2022, Plaintiff was told that he would return to his Crew Leader position after the Springfield, Virginia Crew Leader retired. *Id.* ¶ 50. On May 23, 2022, Chad Bartlett, Field Operations Manager, informed Plaintiff that WGL intended to transfer him to Rockville, Maryland, in exchange for Stephen Nutter (who is Caucasian), despite the fact that Rockville was twice as far from Plaintiff's home. *Id.* ¶ 51. Bartlett told Plaintiff that the decision came from Mizelle Norris in Labor Relations. *Id.* ¶ 52. On May 25, 2022, Plaintiff emailed Bartlett to express his concerns that he was not getting promoted and that he had more time in the Crew Leader position than Nutter. *Id.* ¶ 53. Bartlett responded by stating he would share what he received from Labor Relations. *Id.*

On June 7, 2022, Bartlett, Local 96 Trustee Dontee Figueroa, and Plaintiff had a meeting at the Springfield Office. *Id.* ¶ 55. In the meeting, Bartlett informed Plaintiff and Figueroa that Labor Relations offered two options: (1) Plaintiff could either return to the Rockville, Maryland station and retain his Crew Leader role (Grade 8) or (2) he could remain in Springfield and be demoted to a Crew Assistant (Grade 4). *Id.* ¶ 56. Plaintiff expressed to Bartlett and Figueroa that he believed "it's messed up the company feels like they can do this to me because I was out on disability." *Id.* ¶ 57. Plaintiff then stated he felt like he was being discriminated against because of his race and disability and requested that Labor Relations put their offer in writing. *Id.* ¶ 58. Bartlett responded by stating he would let Labor Relations know. *Id.* ¶ 59. Bartlett informed Mizelle Norris of Plaintiff's complaint shortly after the June 7, 2022 meeting and prior to June 10, 2022. *Id.* ¶ 60.

5

On June 10, 2022, Mizelle Norris confirmed via email, with her Manager and Director copied, that she had changed Plaintiff's position and pay, demoting him back to an entry-level position, attributing the changes to an alleged "administrative error" reported by payroll, and stated that there was nothing further to document in writing. *Id.* ¶¶ 61-62. On June 23, 2022, Mizelle Norris sent another email, with her Manager and Director copied, stating that she had known about the alleged "administrative error" at least since April 29, 2022, 42 days prior to Plaintiff's demotion. *Id.* ¶ 63. Between June 10, 2022, and September 2022, Plaintiff's Workday profile was altered to conceal the differential treatment that he experienced with this position change. *Id.* ¶ 64.

On July 11, 2022, Plaintiff was made a Crew Leader again and was involuntarily transferred to Rockville, MD, without any prior notice or agreement. *Id.* ¶ 65. This transfer was to make way for Nutter, a white Crew leader, with less experience. *Id.* ¶ 66. Plaintiff then recorded a conversation with the Springfield Manager, Ryan Schawalder, informing Schawalder that he was recording and that there was no paperwork or notification regarding his transfer to Rockville. *Id.* ¶ 67. In the video, Schawalder asked Plaintiff if he wanted something in writing, confirming his agreement with the transfer to Rockville. *Id.* ¶ 68. The video also captures Figueroa, who was present at the meeting, stating he would contact Bartlett about the situation. *Id.* ¶ 69. Figueroa recalled Bartlett warning Dawson that, if he did not go to Rockville, he would be disciplined for insubordination. *Id.* ¶ 70.

On July 12, 2022, Figueroa filed a grievance on Plaintiff's behalf for wrongful demotion. *Id.* ¶ 71.

Plaintiff is not aware of any other non-biracial Crew Leader who was transferred involuntarily in the middle of their shift. *Id.* ¶ 72. According to Union Trustee Figueroa, no other employee has been transferred in this manner. *Id.* ¶ 73.

From July 11, 2022, to October 2023, Plaintiff reported to Rockville, Maryland, daily between 1:00 a.m. and 3:00 a.m., and slept in his car to avoid traffic in fear of retaliation for being late. *Id.* ¶ 74.

In September 2022, Plaintiff's Workday profile showed him listed as a Crew Leader with a time in position of six months and 24 days. *Id.* ¶ 75. Simultaneously, the job profile indicated a time in position of 0 days. *Id.* Plaintiff alleges that the mismatch highlights a complete loss of his Crew Leader seniority causing him to earn a lower hourly wage than all 50 plus other Crew Leaders who are not biracial. *Id.* ¶ 76. On September 9, 2022, Plaintiff took screenshots of his pay history which showed no pay adjustments made in June 2022, despite his demotion on June 10, 2022. *Id.* ¶ 77. On September 9, 2022, Plaintiff also took screenshots that falsely showed that his demotion was voluntary and his pay decrease was backdated to December 17, 2021, even though it occurred on June 10, 2022. *Id.* ¶ 78.

In 2022, several non-biracial Crew Leaders, including Darrell Gavin and Dontee Figueroa were transferred to the Springfield, Virginia location through promotions in the CLDP. *Id.* ¶ 79.

After complaining about discriminatory treatment in June 2022, Plaintiff was subjected to two coaching sessions in October 2022 and February 2023, both issued by Labor Relations. *Id.* ¶ 80. Plaintiff alleges that these coaching sessions served as a prerequisite for more severe disciplinary action. *Id.* ¶ 81. On October 5, 2023, Plaintiff sent an email to Coby Turner, a Labor Relations representative, inquiring about the status of the discrimination complaint he made on June 7, 2022. *Id.* ¶ 82. On October 18, 2022, Plaintiff received his first documented coaching session accusing him of failing to use a tablet application that he had no knowledge of while he was on PTO. *Id.* ¶ 83. On February 8, 2023, Plaintiff was subjected to a surprise field audit while he was replacing a gas service. *Id.* ¶ 84. On February 13, 2023, Plaintiff was issued a second

coaching by Ben Hendrickson, the Rockville manager, who appeared to be intoxicated, referencing a non-existent disciplinary action from October 2022 accusing him of misusing WGL funds for food charges. *Id.* ¶ 85. Thereafter, Plaintiff was threatened with an insubordination charge and possible termination. *Id.*

On March 23, 2023, Plaintiff emailed Senior Vice President Laura Boisvert, who is also Caucasian, notifying them of the continued harassment and retaliation via unwarranted documented coaching sessions after following up on his discrimination complaint. *Id.* ¶ 86.

On April 4, 2023, Plaintiff filed a third EEOC charge based on his loss of position, pay, seniority, and being forced into a lower-paying job despite medical clearance. *Id.* ¶ 87.

On June 12, 2023, Plaintiff received another documented coaching session alleging policy violations, despite his supervisor, Matthew Stallard, who is Caucasian, acknowledging that he had not violated any policies and expressing reluctance to issue the coaching session. *Id.* ¶ 88. On July 19, 2023, Stallard informed Plaintiff that he was instructed to issue yet another coaching session for not spending money allocated for uniforms. *Id.* ¶ 89. Stallard documented in an email to Hendrickson that Plaintiff consistently arrived on time, in full company uniform, and fit for duty. *Id.* ¶ 90. He refused to issue the coaching session, saying no policy had been violated. *Id.*

On September 12, 2024, Plaintiff noticed that his PTO requests and approval from September 12-13, 2024, were both deleted from the Workday system. *Id.* ¶ 91. The supervisor later alleged a "system glitch." *Id.* ¶ 93. But at least as of September 16, 2024, there was no such system glitch in the Workday system. *Id.* ¶ 94.

On September 29, 2024, the EEOC issued Plaintiff a Notice of Right to Sue. *Id.* ¶ 95.

On October 3, 2024, Union President Wilder Reed and Trustee Dontee Figueroa filed a grievance on Plaintiff's behalf stating that Plaintiff believed he had been targeted due to his case and prior protected activities. *Id.* ¶ 96.

On December 24, 2024, Plaintiff emailed Turner, copying his Director and Mizelle Norris, reminding them of his June 7, 2022 complaint and stating that he felt he was being retaliated against by Labor Relations. *Id.* ¶ 97. He noted that WGL knew he was aware of its ability to alter Workday records. *Id.* ¶ 98.

## B.  Procedural Background

On December 27, 2024, Plaintiff filed his Complaint. Dkt. 1.  The case was originally assigned to Judge Hilton.  On March 22, 2025, Plaintiff filed his Amended Complaint. Dkt. 6.  On May 5, 2025, Plaintiff filed his Second Amended Complaint.  Dkt. 21.

On May 19, 2025, WGL filed a Partial Motion to Dismiss.  Dkt. 24.  On June 2, 2025, Plaintiff filed his Opposition.  Dkt. 27.

On June 2, 2025, this case was reassigned from Judge Hilton to this District Judge.

On June 9, 2025, Defendant filed its Reply.  Dkt. 28.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III.  ANALYSIS

Defendant argues that a number of Plaintiff's claims are time-barred and that others fail to state a plausible claim for relief. It appears that, with respect to at least some of the time-barred arguments, Plaintiff agrees that his claims are time-barred. The Court will address each argument in turn.

### A.    Whether Claims are Time-Barred under Title VII

Under Title VII, employees must file a charge with the EEOC within 180 days before bringing a civil suit against their employer. 42 U.S.C. § 2000e-5(e)(1) (2009). This limit is extended to 300 days in states, including Virginia, that have a deferral agency. *Id.* If the employee does not file such a charge with the EEOC within this 300-day time limit, they are "forever barred from Title VII relief." *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 618 (E.D. Va. 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002)). The Fourth Circuit has

upheld strict adherence to time limits on discrimination claims because to do otherwise would violate Congress's clear intent. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87-88 (4th Cir. 1990).

Here, Plaintiff filed the applicable charge with the EEOC on April 4, 2023. Dkt. 21 ¶ 87. Thus, any alleged act of discrimination or retaliation that occurred prior to June 8, 2022, is time-barred under Title VII. Plaintiff does not dispute this point; the primary disagreement between the parties in this regard is on what date the transfer to Rockville took place. Plaintiff argues that the transfer was effective when it took place on July 11, 2022. Dkt. 27 at 9. Defendant argues that the decision to transfer was communicated on May 23, 2022, and the claim is thus untimely. Dkt. 25 at 13 (citing Dkt. 21 ¶ 51, Plaintiff alleging that he was informed of transfer on May 23, 2022). Plaintiff argues that the July 11, 2022, "is the operative date of that discretionary act (as opposed to an earlier notification date)." Dkt. 27 at 9. But Plaintiff fails to cite any authority supporting his position. Rather, the Supreme Court of the United States has clearly provided that Title VII's filing limitations period commences from the time that the employment decision is communicated to the employee. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasizing that "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful" (emphasis in original)); *see also Logan v. Colonial Williamsburg Hotel Properties, Inc.*, 1997 WL 151119, at *1 (E.D. Va. Mar. 28, 1997) (same); *Vandermeulen v. Loudoun Cnty. Sch. Bd.*, 2024 WL 3236711, at *3 (E.D. Va. June 28, 2024) (same). As Plaintiff has alleged that he was informed of the transfer to Rockville on May 23, 2022, and the 300-day lookback period reached back only to June 8, 2022, any claim based on the alleged discriminatory

or retaliatory transfer is time-barred. Accordingly, the Motion to Dismiss will be granted in this regard with respect to both the Title VII discrimination and Title VII retaliation claims.

Taking into account this Court's decision with respect to the transfer to Rockville, the parties appear to agree that Plaintiff is left with the following alleged adverse actions: (i) the June 10, 2022 demotion; (ii) the October 18, 2022 coaching session; (iii) the February 2023 field audit; (iv) the February 2023 coaching session; and (v) the June 12, 2023 coaching session. Defendant challenges whether most of these constitute adverse employment actions, so the Court will consider that argument next.

B.    Whether Plaintiff alleges Adverse Actions/Employment Actions under Title VII

To state a claim for Title VII discrimination where, as here, a plaintiff does not allege any direct evidence of discrimination, the plaintiff must demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse action occurred 'under circumstances giving rise to an inference of unlawful discrimination.'" *Credle v. Va. Cmty. Coll. Sys.*, 2025 WL 27827, at *7 (E.D. Va. Jan. 3, 2025) (quoting *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011)).  For purposes of a retaliation claim, a plaintiff must demonstrate: (i) that he engaged in protected activity; (ii) that his employer "took an adverse action against [him]"; and (iii) that "a causal relationship existed between the protected activity and the adverse employment activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  Although a "plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint remains subject to dismissal if it does

not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." *Credle*, 2025 WL 27827, at *7.

The parties both note the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024). As this Court has previously explained, in *Muldrow*, the Supreme Court agreed that the "significance" of or "materiality" of an adverse employment action is correctly examined when a plaintiff asserts a retaliation claim. *Pratt v. Science Applications Int'l Corp.*, 2025 WL 2722645, at *3 (E.D. Va. Sept. 24, 2025); *Muldrow*, 601 U.S. at 357 ("If an action causes less serious harm, . . . it will not deter Title VII enforcement; and if it will not deter Title VII enforcement, it falls outside the purposes of the ban on retaliation."). With respect to a disparate treatment claim, the Supreme Court held that Title VII "flatly prevents injury to individuals based on status, without distinguishing between significant and less significant harms." *Id.* at 358 (internal quotations, citations, and alterations omitted). Thus, after *Muldrow*, a plaintiff "need only show some injury respecting her employment terms or conditions," such that the plaintiff is "left worse off," but need not be "significantly so." *Id.* at 359.

The Court will first take up the allegations regarding the "field audit." The only allegations about the field audit are that it occurred. Plaintiff asserts in his Opposition that the field audit constitutes an adverse employment action because "[f]ormal disciplinary processes . . . [that] may lead to further, more severe, disciplinary action, can be materially adverse." Dkt. 27 at 12. That something "can be materially adverse," does not mean that it is *always* materially adverse, and missing here are any allegations that the field audit itself was part of a formal disciplinary process. Indeed, it seems to the Court that it would the results of any field audit, not the audit itself, that could result in discipline. Plaintiff has not alleged any such facts in his Second Amended Complaint nor has Plaintiff alleged any facts suggesting that a "field audit" is a form of discipline.

13

Accordingly, the Court finds, based on the allegations as they now stand, that Plaintiff has failed to plausibly allege that the field audit caused any injury respecting Plaintiff's terms or conditions of employment (as required for his discrimination claim) let alone one that was material (as required for a retaliation claim). Thus, the Motion to Dismiss will be granted in this regard.

The Court next turns to the "coaching sessions" and whether they constitute an adverse employment action or material adverse action. Plaintiff alleges slightly more with respect to the coaching sessions; namely, Plaintiff alleges that the coaching sessions are "a prerequisite for more severe disciplinary action." Dkt. 21 ¶ 81. Accordingly, Plaintiff suggests that coaching informs the disciplinary process but he does not allege facts demonstrating that coaching is, itself, a form of discipline. Because Plaintiff does not allege that coaching constitutes discipline or explain how coaching alters the terms and conditions of his employment, Plaintiff fails to establish that coaching constitutes an adverse employment action, even post-*Muldrow*.

Judge David J. Novak of this District recently acknowledged, that courts within the Fourth Circuit have held that even written letters of reprimand do not constitute adverse employment actions. *Credle*, 2025 WL 27827, at *8 (citing cases from within the Fourth Circuit). He concluded that *Muldrow* did not save the plaintiff's claim there, because, although *Muldrow* expanded the reach of adverse employment actions, it did not remove the requirement that such actions be connected to the plaintiff's terms and conditions of employment. *Id.* at *8 & n.3; *see also Miller v. City of Aurora*, 2025 WL 947908, at *8 (N.D. Ill. Mar. 29, 2025) (holding that the plaintiff failed "to present a single argument respecting how her four write-ups or performance improvement plan altered any identifiable term or condition of her employment" and holding that such facts failed to establish an adverse employment action under *Muldrow*). Plaintiff attempts to distinguish *Credle* by asserting that a "documented threat of termination as part of a formal

coaching is undeniably 'some harm.'" Dkt. 27 at 16. But Plaintiff's Second Amended Complaint does not allege that the coaching session constituted a "documented threat of termination," and it is axiomatic that a plaintiff may not amend his complaint in opposition to a motion to dismiss. *See Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017) (holding that "a plaintiff may not amend her complaint via briefing"). Given that Plaintiff has not adequately alleged facts sufficient to plausibly pass the low threshold of an adverse employment action, Plaintiff has similarly failed to establish that these coaching sessions pass the higher bar of a material adverse action sufficient to state a retaliation claim. *Muldrow*, 601 U.S. at 357 (discussing the significance and materiality required for a retaliation claim). Accordingly, the Motion to Dismiss will also be granted in this regard with respect to both the Title VII discrimination and retaliation claims.

C.    Whether Plaintiff Has Alleged an ADA Discrimination Claim

In Count 3, Plaintiff asserts that WGL engaged in unlawful employment "by failing to provide a reasonable accommodation, failing to engage in the interactive process, subjecting him to demotion, pay inequity, a change in work location, and unwarranted documented coaching sessions because of his disability (viral encephalitis)." Dkt. 21 ¶ 108. But Plaintiff specifically alleges that he was medically cleared without any restrictions, and thus not suffering any disability, as of December 2021. *Id.* ¶ 48. The ADA, like Title VII, has a 300-day lookback period. *Carter v. Bear Island Paper, LLC*, 2004 WL 3338326, at *3 (E.D. Va. May 25, 2004), *aff'd*, 123 F. App'x 130 (4th Cir. 2005) ("[U]nder Title VII, the ADA or the ADEA, the plaintiff must file a timely charge of discrimination or retaliation with the EEOC . . . no later than 300 days after the alleged unlawful practice occurred."). Again, here, the EEOC charge was filed on April 4, 2023, and thus reaches back only to June 8, 2023. Thus, any claims relating to the lack of a reasonable accommodation or failure to engage in the interactive process are time-barred. Indeed, any claims

15

related to the viral encephalitis at all are time barred, because that issue was resolved by December 2021. *See Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (holding that the ADA's provisions are "formulated entirely in the present tense").[3]

Seeking to avoid this result, Plaintiff attempts to reframe his Second Amended Complaint as asserting a claim based on a "record of" or being "regarded as" having a disability. Dkt. 27 at 19. But Plaintiff did not allege such a claim in his Second Amended Complaint and, as noted *supra*, Plaintiff may not amend his complaint in opposition to a motion to dismiss. In any event, there are no factual allegations indicating that he was "regarded as" disabled in June 2022 – when he suffered the alleged demotion. "[W]hen an employee asserts . . . that he was regarded as disabled, the analysis focuses on the reactions and perceptions of the employer's decisionmakers who worked with the employee." *Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008) (cleaned up). Here, Plaintiff alleges no facts regarding the reactions or perceptions of any decision-maker from which the Court could conclude that Plaintiff was regarded as having a disability.

To the extent Plaintiff attempts to reframe his Second Amended Complaint as being based on a "record of" a disability (notwithstanding his failure to specifically allege such a claim), Plaintiff has failed to a *prima facie* case. To establish a *prima facie* case of discrimination, a plaintiff must show: (i) that he has a disability under the ADA (or, here, a record of such disability); (ii) he suffered an adverse employment action; (iii) he was fulfilling his employer's legitimate expectations; and (iv) the circumstances give rise to a reasonable inference of unlawful disability

---

[3] For the same reasons as with respect to the Title VII claim, regardless of the timeliness of the ADA claim generally, any claim based on the transfer – of which Plaintiff was informed in May 2023 – would more specifically be untimely. And, for the same reasons as the Title VII claim, the coaching sessions and field audit do not plausibly constitute an adverse employment action or adverse action.

discrimination. *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012). Here, there are no circumstances giving rise to a reasonable inference of unlawful disability discrimination. Plaintiff makes no allegations about any comments regarding his record of a disability. And there are approximately six months between Plaintiff's return to work without medical restriction and the June 10, 2022 alleged demotion upon which Plaintiff premises his claim. It is unclear from what facts the Court is intended to draw the inference that the alleged demotion was premised on his record of a disability, but on the facts alleged here, Plaintiff has not plausibly demonstrated that such an inference is warranted. Accordingly, Plaintiff's claim of disability discrimination will be dismissed.

### D.    Whether Plaintiff Has Alleged an ADA Retaliation Claim

In Count 4, Plaintiff asserts an ADA retaliation claim and premises his claim on: "his requests for reasonable accommodation, and his complaints of disability discrimination made on or after June 7, 2022." Dkt. 21 ¶ 112. To the extent that Defendant argues that the ADA retaliation claim is untimely because the alleged protected activities fall outside of the 300-day lookback period, this argument fails. The 300-day lookback period applies to unlawful employment practices, not protected activities. *See Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Title VII plaintiffs are thus <u>not</u> prohibited from relying on allegations or evidence supporting their claims of protected activity, discriminatory or retaliatory animus, or causation that occurred prior to the 300-day window." (emphasis in original)). But for the same reasons discussed *supra* with respect to the Title VII claims, the only timely alleged adverse action is the alleged June 10, 2022 demotion.

"To establish a prima facie retaliation claim under the ADA, a plaintiff must prove (1) he engaged in protected conduct (2) he suffered an adverse action, and (3) a causal link exists between

the protected conduct and the adverse action." *Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573, 580 (D. Md. 2016). Here, there is close to a year between any requested reasonable accommodation and the alleged demotion, which undercuts any causal link between that protected activity and the demotion. *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (finding that a "three- or four-month lapse" between a protected activity and an adverse employment action to be insufficient to establish causation). With respect to the alleged June 7, 2022 complaint of disability discrimination, that is much closer in time to the June 10, 2022 demotion. However, the inference of retaliation is undercut because Plaintiff alleges that the demotion was related to an administrative error that was put in place 42 days earlier. Dkt. 21 ¶ 63.[4] In order to plausibly allege a claim of retaliation, Plaintiff must allege that the adverse action *followed* the protected activity; here, Plaintiff alleges that the error that resulted in his demotion was made 42 days prior to his protected activity. *See Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) (holding that a plaintiff "must show that the adverse employment action took place after the protected activity and because of the protected activity" (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002); *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998))). Moreover, Defendant correctly notes that to constitute opposition to unlawful ADA violations Plaintiff must have a good faith or reasonable

---

[4] In this regard, the Court finds Plaintiff's allegations particularly confusing. Because Plaintiff alleges that the administrative error occurred 42 days earlier, it is unclear what Plaintiff alleges actually occurred on June 10, 2022. Perhaps, with further factual allegations, Plaintiff could resolve this ambiguity and plausibly state a claim. But on the facts alleged here, Plaintiff has failed to do so.

The Court further notes that Defendant has not challenged the June 10, 2022 demotion with respect to any other count. Accordingly, the Court does not address this chronological issue with respect to any other count.

belief that he was being discriminated based on disability. Here, where Plaintiff had been medically cleared, it is unclear the basis for Plaintiff's belief that he was being discriminated against on the basis of a disability. *See, e.g.*, *Mercer v. Drohan Mgmt. Grp., Inc.*, 2011 WL 5975234, at *7 (E.D. Va. Nov. 28, 2011) (dismissing ADA retaliation claim where, at the time of the alleged protected activity, plaintiff "did not have an actual disability, and she did not believe that she was disabled"), *aff'd*, 475 F. App'x 848 (4th Cir. 2012); *Copeland v. Metro. Atlanta Rapid Transit Auth.*, 2010 WL 11500065, at *15 (N.D. Ga. Oct. 8, 2010) (dismissing ADA retaliation claim where, at the time she engaged in alleged protected activity, "[p]laintiff could not have had a reasonably objective belief that she was disabled"). Accordingly, for these reasons the Motion to Dismiss will be granted in this regard.

E.    Whether Plaintiff Has Alleged a Section 1981 Claim

"Section 1981 provides, in relevant part, that 'all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens,' and guards generally against race-based discrimination in the workplace." *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021). Unlike discrimination claims brought under Title VII, a Section 1981 claimant "must allege that [his] race was a but-for cause" of the claimed discriminatory act. *Edouard v. John S. Connor, Inc.*, 2023 WL 3127622, at *5 (E.D. Va. Apr. 27, 2023) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)). Section 1981 claims are subject to a four-year statute of limitations. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291-92 (4th Cir. 2004). The parties agree that any Section 1981 claims based on activity prior to December 27,

2020, are time-barred. Dkt. 25 at 22; Dkt. 27 at 26.  Accordingly, this analysis focuses on the post-December 27, 2020 alleged violations of Section 1981.

Additionally, Plaintiff concedes that "Section 1981 protects against race discrimination rather than disability discrimination" and thus asserts that he "does not pursue accommodation denial claims under Section 1981 as disability-based theories." Dkt. 27 at 28.  Plaintiff provides no factual allegations to support that the denial of his accommodation requests was related to his race; let alone that his race was the but-for basis for the denial.   Plaintiff does not allege that any white employee received an accommodation in similar circumstances.[5]  Accordingly, the Motion to Dismiss will be granted in this regard.

*       *       *

In short, the claims that survive the Motion to Dismiss are: (1) Plaintiff's Title VII discrimination claim against WGL premised on the alleged June 10, 2022 demotion, which was unchallenged by Defendant; (2) his Title VII retaliation claim against WGL premised on the alleged June 10, 2022 demotion, which was unchallenged by Defendant; (3) his Section 1981 discrimination claim against WGL and Mizelle-Norris premised on the alleged June 10, 2022 demotion and his May 2022 decision to transfer Plaintiff to Rockville, which was unchallenged by

_____

[5] Plaintiff makes a reference to Nutter, a Caucasian employee, receiving an accommodation, but there is no allegation that Nutter received a disability accommodation. Dkt. 27 at 28.  The paragraphs of the Second Amended Complaint cited by Plaintiff do not allege that Nutter received an accommodation; rather, the Second Amended Complaint merely alleges that Nutter received the sought after position in Springfield, Virginia.. *See* Dkt. 21 ¶¶ 51, 66, 119-20. Accordingly, the Second Amended Complaint does not support that Nutter was a similarly situated comparator.

Defendants; and (4) his Section 1981 retaliation claim against WGL and Mizelle-Norris premised on the alleged June 10, 2022 demotion and the May 2022 decision to transfer Plaintiff to Rockville.

> **F.** Whether the Claims Should be Dismissed With or Without Prejudice

Defendant argues, primarily in its Reply, that the claims discussed herein should be dismissed with prejudice because Plaintiff has already amended twice. The Court notes that indeed Plaintiff amended once before Defendant was served and once apparently after Defendant informed Plaintiff of pleading deficiencies that Defendant planned to raise in a motion to dismiss. Dkt. 28 at 25. The Court is not convinced, however, that permitting amendment would be futile and, generally, the Court provides a plaintiff with an opportunity to amend once the plaintiff has the benefit of the Court's analysis. Indeed, in citing to this Court's decision in *Raja v. Specialized Loan Servicing, LLC*, 2025 WL 791550 (E.D. Va. Mar. 12, 2025), Defendant failed to cite the full holding that "amendment is generally not permitted where there are 'multiple fundamental defects,' *where "further amendment likely will be futile,'* and where there have been multiple opportunities to amend." *Id.* at *6 (emphasis added). Defendant left out the Court's reliance on the fact that, in *Raja*, further amendment would be futile. Because this Court cannot say, at this juncture, that further amendment would be futile, the Court will provide one, final opportunity to amend. Plaintiff is warned that, if Plaintiff fails to address the deficiencies noted in this Memorandum Opinion, the Court is likely to dismiss future claims with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Partial Motion to Dismiss (Dkt. 24) is GRANTED; and it is

FURTHER ORDERED that the only claims remaining are: (1) Plaintiff's Title VII discrimination claim against WGL premised on the alleged June 10, 2022 demotion, which was

unchallenged by Defendant; (2) his Title VII retaliation claim against WGL premised on the alleged June 10, 2022 demotion, which was unchallenged by Defendant; (3) his Section 1981 discrimination claim against WGL and Mizelle-Norris premised on the alleged June 10, 2022 demotion and his May 2022 decision to transfer Plaintiff to Rockville, which was unchallenged by Defendants; and (4) his Section 1981 retaliation claim against WGL and Mizelle-Norris premised on the alleged June 10, 2022 demotion and the May 2022 decision to transfer Plaintiff to Rockville; and it is

FURTHER ORDERED that all other claims, including the entirety of Counts 3 and 4, are DISMISSED without prejudice; and it is

FURTHER ORDERED that, if Plaintiff desires to further amend his complaint, he is DIRECTED to file any Third Amended Complaint on or before March 27, 2026. If Plaintiff decides not to further amend his complaint, then Defendants are DIRECTED to file an Answer within fourteen days of the passage of the amendment deadline.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all parties of record.

It is SO ORDERED.

Alexandria, Virginia
March 4, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge